UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

DAVID W. SCHANEL,

               Plaintiff,

        -against-

LOCAL NO. 3, BAKERY, CONFECTIONERY,
TOBACCO WORKERS AND GRAIN MILLERS
INTERNATIONAL UNION, AFL-CIO, and
NARCISO MARTAS, individually and as President
of Local No. 3,

               Defendants.

--------------------------------------------------------------------X



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   SEP 20 2007   ★

BROOKLYN OFFICE

CV 07   3947

KORMAN, J.

GOLD, M.J.

Plaintiff, by his attorneys, O'DWYER & BERNSTIEN, LLP complaining of the defendants, alleges the following:

### NATURE OF ACTION

1.      This is an action for injunctive relief and damages brought under the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411, *et. seq.*, arising out of defendants' improper disciplinary action against plaintiff David Schanel. Plaintiff is a member of Local No. 3, Bakery, Confectionery, Tobacco Workers and Grain Millers International Union, AFL-CIO ("Local 3") who was appointed as a trustee of the Local 3 welfare fund in 2000, and elected as secretary-treasurer of Local 3 in 2004, running on a slate which opposed that of incumbent Local 3 President, and defendant herein, Narciso Martas. Plaintiff consistently expressed his opinions concerning improper financial and administrative acts committed by defendant Martas, Local 3, and its welfare fund. In retaliation, plaintiff was removed as a welfare fund trustee; a dubious and coerced complaint was filed by a Local 3 member loyal to Martas, and a sham hearing was held before the Local 3 executive board which

1

culminated in plaintiff being voted out of office by members of the executive board loyal to defendant Martas. Defendants' removal of plaintiff David Schanel from his position as secretary-treasurer of Local 3 was a political action designed to silence a whistleblower. Plaintiff seeks his immediate reinstatement as secretary-treasurer of Local 3, his immediate reinstatement as a trustee of the Local 3 welfare fund, and money damages.

## JURISDICTION

2.    Jurisdiction is conferred on this court pursuant to section 102 of the LMRDA, 29 U.S.C. § 412, section 101(a)(2) of the LMRDA, 29 U.S.C. §411(a)(2), section 101(a)(5) of the LMRDA, 29 U.S.C. §411(a)(5), and section 610 of the LMRDA, 29 U.S.C. §530.

## VENUE

3.    Venue lies in the U.S. District Court for the Eastern District of New York pursuant to section 102 of the LMRDA, 29 U.S.C. §412, as the principal office of defendant Local 3 and defendant Narciso Martas is located in Long Island City, New York.

## COMPLIANCE WITH ADMINISTRATIVE PREREQUISITE

4.    Plaintiff has exhausted all administrative appeals established and required by the Local 3 bylaws and the constitution of the Bakery, Confectionery, Tobacco Workers and Grain Millers International Union, AFL-CIO (respectively, the "International Constitution" and "International"). The International notified plaintiff Schanel by letter dated January 24, 2007 that it voted to deny his appeal of the Local 3 executive board decision to remove him as secretary-treasurer. Plaintiff's administrative remedies were therefore exhausted.

## PARTIES

5.      Plaintiff David Schanel is a member in good standing, as that term is defined in section 3(o) of the LMRDA, 29 U.S.C. 402(o), of Local 3 and is employed by Entenmann's Inc. in Bay Shore, New York.  He resides at 2896 Ocean Avenue, Ronkonkoma, New York.

6.      Defendant Local 3 is a labor organization, as that term is defined in section 3(i) of the LMRDA, 29 U.S.C. §402(i).  The principal office of Local 3 is located at 41-07 Crescent Street, Long Island City, New York.

7.      Defendant Narciso Martas is the President of Local 3 and resides at 177 E. Hartsdale Ave., Apt 6J, Hartsdale, New York.  The principal office of defendant Narciso Martas is located at 41-07 Crescent Street, Long Island City, New York.

## FACTUAL ALLEGATIONS

8.      Local 3 is the sole collective bargaining representative for, *inter alia*, employees engaged in the production department of Entenmann's Inc. baking facility in Bay Shore, Long Island, New York ("Entenmann's").

9.      Plaintiff David Schanel is a member in good standing of Local 3, and has been for approximately twenty-seven (27) years.

10.      In 2000, the Local 3 executive board appointed Schanel to serve as a union trustee of the Local 3 welfare fund (the "Welfare Fund").

11.      During 2004, Schanel ran for the position of Secretary-Treasurer of Local 3 in opposition to the incumbent slate led by the current President, Narciso Martas, defendant herein. Schanel secured the nomination and was elected by the Local 3 membership to serve as Secretary-Treasurer of Local 3 in December, 2004.  Schanel took office in January, 2005.

3

12. While fulfilling his fiduciary obligations as a trustee of the Welfare Fund and serving as Secretary-Treasurer of Local 3, Schanel began to look closely into the operations and financial affairs of Local 3 and the Welfare Fund.

13. On or about September 12, 2005, in his role as a trustee of the Welfare Fund, Schanel delivered a voluminous report, complete with twenty-five (25) exhibits, to his fellow trustees (the "Fund Report"). The purpose of the Fund Report was to advise the trustees of improprieties he discovered in the course of carrying out his fiduciary obligations as a Welfare Fund trustee.

14. The Fund Report highlighted five examples of Welfare Fund improprieties:

a. "At the direction of Narciso Martas, ineligible employees for whom no welfare contributions are made, have been given coverage;

b. At the direction of Narciso Martas, the fund has made payments for non-covered services;

c. At the direction of Narciso Martas, employers have been allowed to pay less than the contribution rate set by the trustees;

d. Payroll audits have occurred in a questionable manner;

e. Questionable broker fees have been paid by the funds without trustee knowledge."

15. On numerous other occasions while serving as a trustee of the Welfare Fund and as Secretary-Treasurer of Local 3, Schanel expressed his views, arguments and opinions to the executive board, Welfare Fund trustees, and the Local 3 membership regarding other improprieties concerning the financial and administrative operations of the Welfare Fund and Local 3.

4

16.     Schanel expressed his views, arguments and opinions that pay increases for staff workers were made without Local 3 executive board approval.

17.     Schanel expressed his views, arguments and opinions that payment of salaries for Local 3 officers who were unable to work was improper.

18.     Schanel expressed his views, arguments and opinions that automobile leases were entered into for significantly more than the market average.

19.     Schanel expressed his views, arguments and opinions that the executive board had not authorized an internal audit for approximately twelve (12) to fifteen (15) years.

20.     Schanel expressed his views, arguments and opinions that expenditures were being made over and above what had been approved by the Local 3 executive board.

21.     Schanel expressed his views, arguments and opinions that there were inaccuracies in the remittance and credits of membership dues payments.

22.     Schanel expressed his views, arguments and opinions that there were inconsistent procedures in place for delinquent dues payments.

23.     Schanel expressed his views, arguments and opinions that inaccuracies existed concerning reimbursements to the Welfare Fund.

24.     Schanel expressed his views, arguments and opinions that attendance and vacation policies were either lacking or nonexistent.

25.     Schanel expressed his views, arguments and opinions that a roll-over time policy did not exist.

26.     Schanel expressed his views, arguments and opinions that a pay-out formula policy did not exist.

27.    Schanel expressed his views, arguments and opinions that Local 3 President Narciso Martas, defendant herein, routinely disregarded the directives of the President of the International, Frank Hurt.

28.    A striking example voiced by Schanel of defendant Martas' disregard of the International's directives concerned Martas raising the fee for members to obtain a retirement card from $2.00 to $5.00.  Schanel argued that the retirement card fee being raised to $5.00 in the March 11, 2006 amendment to the Local 3 By-Laws was a violation of Article XX, Section 3 of the International Constitution, which states that local unions must issue retirement cards for a fee of $2.00.  Furthermore, Schanel expressed his views, arguments and opinions that amending the Bylaws absent approval by the International President violated Article XVI, Section 5 of the International Constitution.

29.    Schanel expressed his views, arguments and opinions with regard to a letter dated May 16, 2006, from International President Frank Hurt to defendant Narciso Martas, which stated, in part, "I am in receipt of your letter dated May 4, 2006, wherein you ask for approval of your revised bylaws, which were already approved by your membership. . . .Article XII, Section 3.  The fee for issuing a retiring card is $2 according to Article XX, Section 3 of the International Constitution. . . .When these changes have been made, please resubmit your bylaws for final approval."

30.    Upon information and belief, on or about May 19, 2006, the requested change to the retirement card fee was made by Local 3 and the Local 3 bylaws were resubmitted to the International President for approval.

31.    Upon information and belief, Local 3 President Narciso Martas, defendant herein, disregarded the direct instructions of International President Hurt, disregarded the International

Constitution, and disregarded the Local 3 bylaws by subsequently instructing Local 3 office manager Pattie Mercurio and Local 3 employee Lydia Rodriguez to continue charging Local 3 members $5.00 for a retirement card.

32. The fall 2006 Local 3 newspaper, page 8, states that the fee for a retirement card is $5.00.

33. Upon information and belief, prior Local 3 newspapers and window receipts indicate that the practice of charging members $5.00 for a retirement card had been ongoing for several years.

34. Schanel expressed his views, arguments and opinions that improper spending by Local 3 beginning on or about March 2005 created a deficit of approximately $27,215.00 per month, which forced the local to withdraw over $300,000.00 from its investments in order to satisfy payroll, employee benefits, and accounts payable.

35. While serving as Local 3 business agent and acting recording secretary, in or about 2004, Schanel expressed his views, arguments and opinions that without Local 3 executive board approval, Local 3 business agent Herbert Bostick was being paid one year's salary while he was unable to work.

36. Upon information and belief, Local 3 President and defendant, Narciso Martas, along with other members of the executive board allied with Martas, desired to silence Schanel in order to end to his investigations and expressions of his views, arguments and opinions concerning the financial and business activities of Local 3 and the Welfare Fund.

37. Section 101(a)(2) of the LMRDA, 29 U.S.C. §411(a)(2), afforded Schanel the right to express his views, arguments, and opinions concerning the financial and administrative activities of Local 3, President Martas, and the Welfare Fund.

38.    Upon information and belief, Local 3 President Narciso Martas conspired with members of the executive board loyal to Martas, to remove Schanel as a trustee of the Welfare Fund and as secretary-treasurer of the Local.

39.    Upon information and belief, Local 3 President Narciso Martas and his co-conspirators carried out their conspiracy by coercing and/or bribing Local 3 member and business agent Lumen Manuel Jimenez ("Jimenez") into making false allegations against Schanel at an executive board meeting and filing a superfluous and unfounded complaint with Local 3 against Schanel.

40.    At the April 19th, 2006 executive board meeting, Jimenez questioned Schanel as to why Schanel made an inquiry with the Welfare Fund's pharmaceutical administrator concerning Jimenez's prescription drug benefits. A heated debate was followed by a vote to remove Schanel as a trustee of the Welfare Fund. Schanel was removed from his position as a trustee of the Welfare Fund by a vote of twelve to three (12-3).

41.    Jimenez then filed a written complaint, dated May 10, 2006, against plaintiff in his capacity as secretary-treasurer with the Local 3 executive board (the "Complaint").

42..    Curiously, although the Complaint is dated May 10, 2006, the postage stamp on the envelope which contained the Complaint indicates that the Complaint was not mailed to the executive board until June 28, 2006. The Complaint itself bears a stamp indicating that it was received on June 29, 2006.

43.    Upon information and belief, the Complaint was not written by Lumen Manuel Jimenez, but rather, by Narciso Martas and/or a co-conspirator on the executive board loyal to Martas.

8

44.    Upon information and belief, when the Complaint was filed, it contained only the signature of Jimenez, and therefore was not in compliance with Article XXII, section 2(a) of the International Constitution.

45.    Article XXII, section 2(a) of the International Constitution states that:

"If the charged party is a local union officer charged with offenses arising from performance of his/her official duties, the charges must be signed either by one-third of the members of the local union's Executive Board or by three (3) members of the local union."

46.    Upon information and belief, subsequent to Mr. Jimenez filing the Complaint, defendant Martas, upon realizing that the Complaint was not executed in compliance with the International Constitution, gathered three (3) executive board members in his office and, without Mr. Jimenez present, had them sign the Complaint below Jimenez's signature.  The executive board members were Michael Smith, Joseph Kosofsky, and Lawson Quiah.

47.    Defendant Martas, however, did not read Article XXII, section 2(a) of the International Constitution clearly enough.  Messrs. Smith, Kofosky and Quiah were members of the Local 3 executive board.  The International Constitution says the Complaint must be signed by one third (1/3) of the executive board or three (3) members of the local.  Defendant Martas had the Complaint signed by three (3) members of the executive board.  That is not what the International Constitution requires.

48.    The Complaint, therefore, violated the signature requirements of Article XXII, section 2(a) at the time Jimenez filed it.

49.    The Complaint still did not meet the signature requirements of Article XXII, section 2(a) after defendant Martas had three (3) executive board members secretly sign the Complaint later in his office.

9

50.   The Local 3 executive board should have immediately dismissed the Complaint when Schanel advised them at the hearing on the Complaint that the Complaint was invalid as the signature requirement of the International Constitution was not met.

51.   The unfounded Complaint contained seven (7) purported charges, plus an "additional complaint." The seven (7) charges were in fact not charges at all, but rather, a word-for-word recitation of the "Grounds for Charges Against Members and Officers" taken from the Local 3 by-laws, Article XIII, Section 6. The identical words may also be found in the International Constitution, Article XXII, Section 1, entitled "Basis for Charges".

52.   The first seven charges were nothing but the grounds or basis for charges. Section 101(a)(5)(a) of the LMRDA, 29 U.S.C. 411(a)(5)(a) requires that a member may not be disciplined unless such member has been "served with written specific charges." The first seven charges were not specific charges. They were not general charges. They were not charges at all.

53.   The "additional complaint" was a vague statement that plaintiff violated Jimenez's individual right to privacy regarding his health and medical history. It stated,

> "In addition to the list of complaints above, I would also like to note Mr. Schanel's direct violation of my individual right to privacy regarding my health and medical history. Mr. Schanel's inquiry into my medical claims history, specifically my prescription drug benefits record, without my knowledge or consent is both illegal and unethical. According to the HIPAA laws of 1996, covered entities must maintain the confidentiality and privacy of an individual participants Protected Health Information. The Fund and NMHCRx are covered entities and their disclosure of my medical history to Mr. Schanel, predicated under the assumption that he had a right to receive such information has violated such rights to privacy."

54.   Mr. Jimenez's "note" contained in this "additional complaint" is also not a charge. It is a vague statement, containing no detail or specificity. The Complaint, therefore, did

10

not contain a single charge. The Local 3 executive board should have immediately dismissed the Complaint.

55.     Even if the "note" contained in the "additional complaint" may somehow be construed as a charge, it was not a specific charge as it did not specifically state exactly what actions Schanel allegedly took that allegedly violated Jimenez's right to privacy. Therefore, the LMRDA §101(a)(5)(a) requirement that Schanel be "served with written specific charges" was not met in the "additional complaint". The Local 3 executive board should have immediately dismissed the Complaint.

56.     Regardless of how the "additional complaint" is construed, it was legally impermissible for a private tribunal such as the Local 3 executive board to act upon.

57.     Whoever authored the Complaint made repeated references to HIPAA in the "additional complaint". The privacy rule of the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. §§ 1320 *et seq.*, 45 C.F.R. §§ 160-164 ("HIPAA") limits the use and disclosure of protected health information by covered entities, such as a welfare fund and its third party pharmaceutical administrator.

58.     If an individual believes that a covered entity or person violated the HIPAA privacy rule, in accordance with 45 C.F.R. §160.306, he must file a complaint with the Office of Civil Rights at the United States Department of Health and Human Services.

59.     The courts have repeatedly made clear that there is no private right of action under HIPAA. A person may not seek private enforcement of HIPAA.

60.     The Complaint filed by Mr. Jimenez with Local 3 was a means of seeking private enforcement of HIPAA.

11

Case 1:07-cv-03947-ERK-SMG   Document 1   Filed 09/20/07   Page 12 of 25 PageID #: 14

61. If Mr. Jimenez believed that plaintiff Schanel violated the HIPAA privacy rule, the only means by which he could seek redress would be by filing a complaint with the Department of Health and Human Services. The law does not afford Mr. Jimenez the right to seek private enforcement of HIPAA, and the law does not allow a private tribunal such as the Local 3 executive board to hear allegations regarding an alleged violation of the HIPAA privacy rule.

62. Accordingly, the Local 3 executive board should have immediately dismissed the Complaint. It was not filed in the proper forum, and the Local 3 executive board had no legal right to adjudicate it.

63. By letter dated October 4, 2006, Local 3 Vice President Joseph DiNatale advised Schanel that the charges filed against him by Jimenez would be heard at the executive board meeting scheduled for October 18, 2006 (the "Hearing").

64. Prior to the hearing, Jimenez stated to Maria Teresa Vega, a Welfare Fund office employee, that he did not want to go through with the Complaint, but President Martas was pushing him to help remove Schanel from office.

65. Upon information and belief, President Martas and those members of the executive board loyal to him constituted a majority of the executive board present at the Hearing. They had already decided Schanel's fate before the hearing began. In fact, prior to the hearing, President Martas told Local 3 Vice President Joseph DiNatale told that "it is a slam dunk." DiNatale shared this comment with Schanel prior to the Hearing.

66. Schanel appeared at the hearing unsure as to the charges against him, due to the fact that the Complaint contained no written specific charges, contrary to the requirement contained in section 101(a)(5)(a) of the LMRDA.

67. Schanel was also not "given a reasonable time to prepare his defense" in accordance with section 101(a)(5)(b) because he had no written specific charges to prepare a defense against.

68. The Hearing itself was a sham, as the often inaccurate minutes submitted by recording secretary Warren Wolf reflect. Jimenez did not read the Complaint to the executive board because he did not even have a copy. Nobody read the Complaint into the record. Jimenez could not articulate exactly what Schanel did or how he was harmed by Schanel's actions. Jimenez did not produce any written evidence or question any witnesses.

69. The minutes of the Hearing show that what transpired was a group of executive board members, some clearly confused, asking questions of each other and interrupting one another for a brief thirty (30) minutes.

70. The minutes of the Hearing show that the "additional complaint" was never clarified such that Schanel could prepare an adequate defense. The minutes state that executive board gave Schanel a meager twenty (20) minute recess to prepare a defense against what remained as unclear charges. Schanel's records indicate that he was given only thirteen (13) minutes.

71. Schanel was not "afforded a full and fair hearing" in accordance with LMRDA section 101(a)(5)(c).

72. At the conclusion of the Hearing, according to the minutes, thirteen (13) board members voted Schanel guilty, six (6) voted Schanel not guilty, and one (1) member abstained.

73. The executive board then voted as to Schanel's punishment. Eleven (11) members voted to remove Schanel as secretary-treasurer, seven (7) voted for a thirty (30) day suspension without pay, and two (2) members abstained.

74.    Defendant Narciso Martas and his co-conspirators had succeeded. Secretary-Treasurer David Schanel had been removed from office.

75.    Defendants cumulative actions were in direct violation of Section 609 of the LMRDA, 29 U.S.C. §529, which prohibits labor organizations from expelling a member for exercising any right to which he is entitled. Plaintiff Schanel was entitled to express any views, arguments, or opinions pursuant to section 101(a)(2) of the LMRDA, 29 U.S.C. §411(a)(2). Plaintiff Schanel was entitled to be served with written specific charges, given a reasonable time to prepare a defense, and afforded a full and fair hearing pursuant to section 101(a)(5)(a-c).

76.    In accordance with the appeal procedures of Article XXII, section 4(b) of the International Constitution, on October 27, 2006, plaintiff Schanel appealed the Local 3 executive board's decision to remove him from the position of secretary treasurer to the General Executive Board of the International.

77.    International President Frank Hurt responded to Schanel by letter dated October 31, 2006, asking Schanel to forward him, no later than December 15, 2006, any additional materials or evidence he wished the General Executive Board to review.

78.    International President Frank Hurt, by letter dated October 31, 2006, forwarded Schanel's appeal to Local 3 President and defendant Narciso Martas and asked Martas to submit his response to the appeal by December 15, 2006.

79.    By letter dated December 6, 2006, Martas submitted his reply to Schanel's appeal (the "Reply").

80.    The Reply was fraught with inaccurate and false statements.

14

81.   Martas stated in the Reply that without asking for permission before or during the hearing, "Brother Schanel recorded the hearing; violating the trust of the Executive Board and the officers of the Union". That is false. Plaintiff Schanel did not record the hearing.

82.   Martas stated in the Reply that "at no time did Brother Schanel request that a stenographic record of the hearing be taken." That is false. On or about one (1) week prior to the Hearing, Schanel informed Local 3 Vice President Joseph DiNatale that he would have a stenographer at the hearing. The following day, Vice President DiNatale informed Schanel that he would supply the stenographer, so it was not necessary for Schanel to bring one. No stenographer was present at the Hearing.

83.   Martas stated in the Reply, "The Board found that the evidence supported Brother Jimenez's charges." That is false. Not a single piece of evidence was introduced at the Hearing. Not a single witness testified on Jimenez's behalf. There was no evidence presented by Jimenez at the Hearing, written or oral, to support what defendants characterize as charges.

84.   Martas stated that, "The evidence presented was that Brother Schanel who, while serving as a Trustee of the Local 3 Welfare Fund by telephone and e-mail, requested and obtained, under false pretenses, the claims history of Brother Jimenez and his wife from the Welfare Fund's Pharmaceutical Benefit Provider." This statement is false.

85.   Schanel contacted the Welfare Fund's pharmaceutical administrator by telephone on or about March 28, 2006 to obtain the claims history of Jimenez for the sole purpose of determining whether Jimenez was approaching his maximum allowable annual prescription coverage in the event that Jimenez's workers compensation case against his prior employer was unsuccessful.

86. Schanel requested only the amounts expended and not information pertaining to the prescription medications prescribed to Jimenez.

87. Schanel's intent was to help Jimenez so that he could inform Jimenez as to the amount available on his annual pharmaceutical benefits. Schanel had no desire to harm Jimenez.

88. Schanel did not request any information as to Jimenez's wife.

89. Amy Coullioud, an employee of the pharmaceutical administrator, incorrectly sent Schanel an e-mail dated March 28, 2006 which contained not only the amounts expended for Jimenez, but also the amounts expended by his wife, as well as a list of the drugs prescribed to Jimenez and his wife.

90. Upon opening the attachment to the e-mail, Schanel realized it was not what he requested, so he stopped reading it and deleted the e-mail from his system in accordance with the confidentiality statement at the bottom of the e-mail instructing the receiver to delete it if the transmittal was in error. At no time did Schanel share the information contained in the e-mail with another person.

91. If Jimenez feels that his HIPAA privacy right was violated, his claim is against Amy Coullioud and the pharmaceutical administrator for transmitting the list of drugs to Schanel.

92. Martas stated in the Reply that "Brother Schanel obtained the claims history by falsely representing to the provider that the information was needed to assist the Welfare Fund in defending itself against a lawsuit; there was no suit pending against the Fund." That is false. As stated above, the limited information requested by Schanel was to determine whether Jimenez was closing in on his annual cap, so that in the event Jimenez's workers compensation case against his prior employer was unsuccessful and Jimenez needed to obtain coverage under the

Welfare Fund's prescription plan, Schanel could advise Jimenez accordingly. The "lawsuit" was Jimenez's workers compensation case against his prior employer.

93. By letter dated December 11, 2006, as requested by International President Hurt, Schanel submitted an additional statement with thirteen (13) exhibits in support of his appeal.

94. By letter dated January 24, 2007, International President Frank Hurt informed Schanel that by Proposition #2407, the General Executive Board voted to deny his appeal and uphold the Local 3 executive board's decision to remove Schanel as secretary-treasurer.

95. Proposition #2407, drafted by International President Frank Hurt, was a recommendation to the General Executive Board that it sustain the Local 3 executive board decision to remove Schanel as secretary-treasurer. The recommendation in Proposition #2407 was based upon the false statements and lies made by Local 3 President Narciso Martas in his Reply and an incorrect interpretation of the HIPAA privacy rule, an interpretation which only the Department of Health and Human Services was entitled to make.

96. The conduct of defendants stated above was intentional, knowing and reckless, designed to inflict emotional harm upon Schanel.

97. As a direct and proximate result of defendants' unlawful acts as described above, plaintiff's removal as secretary-treasurer of Local 3 and trustee of the Welfare Fund caused him to suffer substantial loss and damage as follows:

a. Plaintiff's reputation among his fellow union members has been damaged as they have lost trust in him, believing that he violated a fellow member's privacy.

b. Plaintiff's income has decreased as his wages while serving as secretary-treasurer were higher than his wages in his present position as a worker in the Entenmann's production facility.

17

c.  Plaintiff has suffered physical harm and his health has deteriorated as he is now performing manual labor in the Entenmann's production facility rather than working in an office environment.

d.  Plaintiff has suffered emotional harm, including stress, anxiety, depression, and strained family relations.

e.  Plaintiff has been forced to expend significant time and money defending himself against defendants and commencing this action.

f.  Defendants' unlawful acts were performed willfully and with malicious intent to injure plaintiff and deprive plaintiff of his rights under the LMRDA. Consequently, plaintiff requests punitive damages against defendants in an amount to be decided by the court.

## AS AND FOR A FIRST CAUSE OF ACTION

98.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 97 as if fully set forth herein.

99.  Defendants violated the rights of Schanel under section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2) by removing Schanel from his elected position as secretary-treasurer of Local 3 in retaliation for his political views, arguments and opinions.

## AS AND FOR A SECOND CAUSE OF ACTION

100.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 99 as if fully set forth herein.

101.  Defendants violated the rights of Schanel under section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2) by removing Schanel from his appointed position as a trustee of the Welfare Fund in retaliation for his political views, arguments and opinions.

18

## AS AND FOR A THIRD CAUSE OF ACTION

102. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 101 as if fully set forth herein.

103. By removing Schanel from his elected position as secretary-treasurer of Local 3 without his being served with written specific charges, given a reasonable time to prepare his defense and afforded a full and fair hearing, defendants violated the rights of Schanel under section 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5).

## AS AND FOR A FOURTH CAUSE OF ACTION

104. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 103 as if fully set forth herein.

105. By removing Schanel from his elected position as secretary-treasurer of Local 3, thereby violating section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2), and section 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5), defendants violated the rights of Schanel under section 609 of the LMRDA, 29 U.S.C. 529.

## AS AND FOR A FIFTH CAUSE OF ACTION

106. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 105 as if fully set forth herein.

107. By removing Schanel from his appointed position as a trustee of the Welfare Fund, thereby violating section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2), defendants violated the rights of Schanel under section 609 of the LMRDA, 29 U.S.C. 529.

## AS AND FOR A SIXTH CAUSE OF ACTION

108. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 107 as if fully set forth herein.

19

109.    In removing Schanel from his elected position as secretary-treasurer of Local 3, defendants violated Article XIII, section 6 of the Local 3 bylaws and Article XXII, sections (1) and 2(a) of the International Constitution.

## AS AND FOR A SEVENTH CAUSE OF ACTION

110.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 109 as if fully set forth herein.

111.    In removing Schanel from his elected position as secretary-treasurer of Local 3, defendants intentionally inflicted emotional distress upon Schanel, as defendants' conduct was intentional, knowing and reckless, designed to inflict emotional harm upon Schanel.

112.    As a direct and proximate result of said intentional conduct, Schanel has and will continue to suffer damages including, but not limited to, anxiety, stress and emotional trauma.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

113.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 112 as if fully set forth herein.

114.    In removing Schanel from his appointed position as a trustee of the Welfare Fund, defendants intentionally inflicted emotional distress upon Schanel, as defendants' conduct was intentional, knowing and reckless, designed to inflict emotional harm upon Schanel.

115.    As a direct and proximate result of said intentional conduct, Schanel has and will continue to suffer damages including, but not limited to, anxiety, stress and emotional trauma.

## AS AND FOR A NINTH CAUSE OF ACTION

116.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 115 as if fully set forth herein.

117.    In removing Schanel from his elected position as secretary-treasurer of Local 3, defendants' conspired to violate the LMRDA and took overt steps in furtherance of the conspiracy, from which Schanel's damages naturally and directly flow.

### AS AND FOR A TENTH CAUSE OF ACTION

118.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 117 as if fully set forth herein.

119.    In removing Schanel from his appointed position as a trustee of the Welfare Fund, defendants' conspired to violate the LMRDA and took overt steps in furtherance of the conspiracy, from which Schanel's damages naturally and directly flow.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION

120.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 119 as if fully set forth herein.

121.    In removing Schanel from his elected position as secretary-treasurer of Local 3, defendants violated 45 C.F.R. §160.306 by holding a hearing and acting on the Complaint as there is no private right of action for a violation of the HIPAA privacy right. A complaint alleging a violation of an individual's HIPAA privacy right may only be brought before the Office for Civil Rights of the United States Department of Health and Human Services.

WHEREFORE, plaintiff demands judgment against the defendants as follows:

(a) Voiding the action taken by defendants in removing Schanel as secretary-treasurer of Local 3 as said action was in violation of Schanel's rights under the LMRDA;

(b) Ordering defendants to immediately reinstate Schanel as secretary-treasurer, retroactive to the date of his expulsion, for the remainder of his term;

21

(c) Voiding the action taken by defendants in removing Schanel as a trustee of the Welfare Fund as said action was in violation of Schanel's rights under the LMRDA;

(d) Ordering defendants to immediately reinstate Schanel as a trustee of the Welfare Fund, retroactive to the date of his expulsion.

(e) Permanently restraining and enjoining defendants, their agents, and employees from interfering with Schanel's exercise of his rights under provisions of the LMRDA;

(f) Granting compensatory damages to Schanel for the lost wages, physical and emotional injury he incurred as a result of his removal as secretary-treasurer of Local 3 and as a trustee of the Welfare Fund;

(g) Granting plaintiff an award of punitive damages;

(h) Granting plaintiff an award of attorney's fees and litigation expenses; and

(i) Such other and further relief as the court deems just and proper.


Dated:  New York, New York
        September 20, 2007

                                Yours etc.,

                                O'DWYER & BERNSTEIN, LLP


                                /s/ Brian O'Dwyer
                                BRIAN O'DWYER (BOD 9522)
                                CRAIG R. NUSSBAUM (CN 8742)
                                Attorney for Plaintiff
                                52 Duane Street
                                New York, New York 10007
                                (212) 571-7100

DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable.

O'DWYER & BERNSTIEN, LLP

/s/ Brian O'Dwyer
BRIAN O'DWYER (BOD 9522)
CRAIG R. NUSSBAUM (CN 8742)
Attorney for Plaintiff
52 Duane Street
New York, New York 10007
(212) 571-7100

Date: September 20, 2007

(c)  Voiding the action taken by defendants in removing Schanel as a trustee of the Welfare Fund as said action was in violation of Schanel's rights under the LMRDA;

(d)  Ordering defendants to immediately reinstate Schanel as a trustee of the Welfare Fund, retroactive to the date of his expulsion.

(e)  Permanently restraining and enjoining defendants, their agents, and employees from interfering with Schanel's exercise of his rights under provisions of the LMRDA;

(f)  Granting compensatory damages to Schanel for the lost wages, physical and emotional injury he incurred as a result of his removal as secretary-treasurer of Local 3 and as a trustee of the Welfare Fund;

(g)  Granting plaintiff an award of punitive damages;

(h)  Granting plaintiff an award of attorney's fees and litigation expenses; and

(i)  Such other and further relief as the court deems just and proper.

Dated:  New York, New York
        September 20, 2007

Yours etc.,

O'DWYER & BERNSTEIN, LLP

BRIAN O'DWYER (BOD 9522)
CRAIG R. NUSSBAUM (CN 8742)
Attorney for Plaintiff
52 Duane Street
New York, New York 10007
(212) 571-7100

22

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable.

O'DWYER & BERNSTIEN, LLP

BRIAN O'DWYER (BOD 9522)
CRAIG R. NUSSBAUM (CN 8742)
Attorney for Plaintiff
52 Duane Street
New York, New York 10007
(212) 571-7100

Date: September 20, 2007

23